# Kidd *versus* The Commonwealth.

1. In a suit on a recognizance in the Orphans' Court given by an heir who took one of three purparts at the appraisement, executed in favor of the Commonwealth for the payment to the other heirs their proportional shares in the purpart, it was admissible for the recognizor, the defendant, under the plea of payment with leave to show that one of the other purparts, not taken at the appraisement, was sold by a trustee under order of the Orphans' Court, and that all of the balance of the proceeds, after payment of debts of the intestate, was paid to the plaintiff, and that the defendant in the suit never made any objection. The fact whether or not it was received as part payment, should have been submitted to the jury.

2. Such a recognizance should be sued in the name of the Commonwealth as the legal party, though it is proper that the name of the persons suing, should be stated on the record. A mistake however, in this respect, will not furnish a defence against the Commonwealth, as the court should look to the distribution of the amount recovered. The judgment should not be for the *penalty*, but for the amount of the interest of those suing.

3. It is not necessary that all the *cestuis que use* should be marked of record. Less than the whole number may sue, and they may recover as much of the fund as they show themselves entitled to, leaving the balance for those entitled who may afterwards sue. But where they represent *one heir*, their joinder in the suit would seem to be peculiarly proper.

ERROR to the Common Pleas of *Berks county*.

This was a scire facias on a recognizance in the Orphans' Court,

[Kidd v. The Commonwealth.]

in the penal sum of $7200, brought in the name of the Commonwealth of Pennsylvania to the use of Samuel Moore and Robert Alexander Moore, who sue by their guardian, John M. Keim, and of James and William Moore, heirs of John Kidd, deceased, vs. Mary Kidd.

The plaintiff claimed to recover the one third part of the valuation, amounting to $1200, with interest from 10th January 1841.

The defendant plead payment, with leave to give the special matters in evidence, &c.

John Kidd died in 1829, intestate and without issue, (leaving two sisters, viz. Mary Kidd, the defendant, Anna, the widow of James Shoemaker, and the children of Lydia, wife of Charles Moore, another sister,) seized of two lots in Reading, one situate in Penn street, containing 60 feet, and the other on Hamilton street, containing 30 feet.

Lydia Moore died in the lifetime of the said John Kidd, leaving issue, four children—the plaintiffs in this suit.

In 1839, *John M. Keim, guardian of the children of Mrs. Moore*, presented his petition for an inquest, &c.

The inquest divided the 60 feet lot into two equal parts—appraised purpart No. 1 at $3600, and purpart No. 2 at $1800, and purpart No. 3, on Hamilton street, at $700.

Mary Kidd accepted purpart No. 1, and entered into recognizance; Ann Shoemaker accepted purpart No. 3, and entered into recognizance; John M. Keim, guardian, &c., refused to accept purpart No. 2, and prayed a sale, &c.

The court, at the request of the heirs, appointed A. F. Miller, Esq., trustee to sell purpart No. 2, and granted an order of sale, and he sold the same to Henry Shearer, for $1575.

This sum of $1575 was paid to the creditors of John Kidd, *except a balance of $468*, as appears by the account of A. F. Miller, &c.

This balance of $468 was paid to *John M. Keim, guardian*, on the 6th day of November 1840: one third, viz. $156, *belonged to Mary Kidd, the defendant in this suit;* but as she was debtor to Keim in $1200 for his ward's share in the recognizance, he received the whole sum, including the share of Ann Shoemaker, who was also debtor in $233.33, for the one-third of her recognizance.

Keim died in 1846, but, prior to his death, placed the amount received in the hands of Joseph L. Stichter, with instructions to pay it to his wards, with interest, whenever they should demand it.

The plaintiff had gone to reside in the State of Indiana about the time of the inquest.

To August term 1841, No. 376, Keim brought suit on the recognizance, but nothing was done until April 1850, when William Moore, one of the plaintiffs, employed counsel to proceed with the suit. The case was put at issue and entered for trial.

A petition of William Moore was presented to the Orphans'

[Kidd *v.* The Commonwealth.]

Court, at the April term 1850, setting forth the receipt of the $468 by Keim, as above stated, and that one of his brothers, to wit, Robert Alexander, died in the West, in July 1846, intestate and without issue, and that the two other brothers had left their former residence, one upwards of twelve, and the other upwards of seven years, and had not been heard of since; and prayed the court to decree the payment of the same to him, as surviving heir.

The court, upon the report of a commissioner of the facts contained in the petition, decreed the money to the said William Moore, upon giving his own bond to refund to his brothers in case they should appear and claim the same. William Moore received the same April 16, 1850, and gave bond as per decree. · Upon the trial of the case, the defendant gave notice of these facts, and claimed credit for $156 and interest, which the court refused to allow, and directed the jury to find a verdict for the whole amount of one-third of the valuation of purpart No. 1, with interest.

The notice of special matter, on the part of defendant, was as follows:—

The defendant will offer to prove on the trial of the above cause, that the plaintiffs, by their guardian, some time in the year 1840 or 1841, received from Anthony F. Miller, trustee to sell part of the real estate of John Kidd, deceased, the sum of $468, of which sum one-third belonged to the defendant, and that she is entitled to a credit on the recognizance, upon which the above suit is brought, for so much as she was entitled to receive.

To show that she was entitled to that sum, viz. one-third of the said sum of $468, the defendant will give in evidence the account and report of the auditors thereon, of the said Mary Kidd, administratrix of John Kidd, deceased, and the receipt of John M. Keim, guardian as aforesaid, to the said A. F. Miller, for the said sum of $468, and the proceedings in the Orphans' Court of Berks county, authorizing the sale of the real estate of the said John Kidd, deceased, by said A. F. Miller, to Henry B. Sherer, and the account, &c. of said Miller, filed in the said court, and the decree of the Orphans' Court, directing the payment of the money raised by said sale, to the Farmers' Bank of Reading, and to the said Mary Kidd, and all the records and papers relating to or bearing upon that point.

On the trial, the defendant's counsel moved to have the jury sworn between the Commonwealth of Pennsylvania, for the use of William Moore, and the defendant, Mary Kidd—the said William Moore being the real and only plaintiff in the case; which motion the court overruled, and directed the jury to be sworn as the record stood. To which decision by the court, the defendant's counsel excepted. This was the *first* bill.

The plaintiff having opened his case, offered in evidence the proceedings in the Orphans' Court on the estate of John Kidd, de-

ceased, viz. the petition of John M. Keim, guardian, &c., for an inquest on the real estate of the said deceased—inquest awarded 11th December 1839—and offered to read the recognizance of Mary Kidd, on which the said scire facias was brought.   To the admission of which the defendant's counsel objected, because the recognizance is joint, and sued by several of the heirs, *but not by all;* which objection the court overruled.   This was the second bill.

The recognizance, dated January 10, 1840, was as follows :—

Purpart No. 1, being accepted by and adjudged to Polly Kidd, upon her paying or securing to be paid to the other heirs and legal representatives of the said deceased, their equal and proportionable shares respectively of the net two-thirds within one year, with interest from the first day of April next.   "Therefore I the said Polly Kidd acknowledge to owe to the Commonwealth of Pennsylvania the sum of $7200 of the real estate so accepted and adjudged to be made and levied, if default be made in the following condition, that is to say, if the said Polly Kidd shall and do well and truly pay or cause to be paid to the other heirs and legal representatives of the said deceased respectively, their equal and proportionable shares respectively, of and in the said valuation money, agreeably to the adjudication, then this recognizance to be void, otherwise to be in full force and virtue."

The plaintiff closed—and defendant offered, under the plea and notice of special matter, the following evidence, to wit:—An order of court to Anthony F. Miller, trustee, to sell purpart No. 2, and a sale for $1575.   The accounts of Anthony F. Miller, trustee to sell, &c., and of Mary Kidd, administratrix of John Kidd, together wiith the decrees of said court, and payments pursuant, &c., and the payment by said Anthony F. Miller to John M. Keim, guardian of the plaintiffs, of $468, (*pro ut* said papers, &c. ;) to which the counsel for the plaintiff objecting, the court sustained the objection, and sealed a bill of exceptions.   This was the third bill.

The defendant's counsel further offered in evidence the record in the Orphans' Court, to April term 1850, consisting of a petition by William Moore, the plaintiff, setting forth the receipt by John M. Keim, of the said $468, as guardian, &c., and claiming the same in his own right, and as the survivor of the said plaintiffs above named—the decree by the court in his favor and the receipt of it, (*pro ut* the record and proceedings, &c.;) to which the said plaintiff objected, and the court rejected it, and sealed a bill of exceptions. Fourth bill.

The defendant further called Anthony F. Miller, to prove the decease of John M. Keim in 1846, and that Ann Shoemaker, named in the recognizance, on which the suit is brought, is alive and residing in Reading.   To which defendant's counsel objected, and the court sustained the objection, and sealed a bill of exceptions. This was the fifth bill.

[Kidd *v.* The Commonwealth.]

The defendant further called J. B. Gordon, Esq., to prove that William Moore is the only claimant, and that he claims the whole amount of the recognizance in right of said William, as surviving him, &c. Rejected and bill of exceptions sealed. This was the sixth bill.

Gordon, J., charged:—This is a scire facias in the name of the Commonwealth of Pennsylvania against Mary Kidd, on a recognizance in the Orphans' Court of Berks county, entered into by the defendant to secure the payment of purparts or shares of the other heirs of John Kidd, deceased, in land taken at the appraisement in said court by the defendant, Mary Kidd, who was a sister of the deceased. The Commonwealth is the plaintiff in the action, which is brought for the use of the children of Lydia Moore, who was a sister of the decedent John Kidd. The defence made here has reference to the manner in which the suit is brought. It is purely a legal or technical defence, and will sufficiently appear in the points of law submitted to the court by the defendant's counsel. Your verdict will be regulated by the answers given to these points by the court.

Points submitted on part of the defendant were as follow :—

1. That the action cannot be sustained by joining four of the five claiming under the recognizance, and claiming a joint verdict for four. If a specific sum is claimed, each heir should sue for him or herself.

2. If the action can be sustained in the name of the Commonwealth of Pennsylvania, as a trustee for the recognizors, without their appearing on the record, then the verdict and judgment should be for the penalty of the recognizance according to the præcipe and scire facias.

3. The recognizance being given, and made payable to the heirs of John Kidd respectively and severally, the cause of action upon it is several, and the verdict and judgment should be for the specific amount due to each, and must be specifically assigned in the breach of the scire facias.

The first point the court answer in the negative. The Commonwealth is the plaintiff, and as such entitled to recover the shares of those who sue in her name. The respective shares of those for whom she sues in the sum recovered can be adjusted after recovery. There is no question here of joinder or non-joinder of parties. The Commonwealth is the only legal party, and the number of persons for whose use the action is marked is quite immaterial, except that in this action it furnishes information to the court and jury as to the sum for which the verdict should be rendered.

2. The verdict should not be for the penalty of the recognizance, but for the aggregate of the sums due to those who have brought this action in the name of the Commonwealth for their use. Who they are appears in the scire facias and the papers given in evi-

[Kidd v. The Commonwealth.]

dence.   If there be other claimants under this recognizance not suing here, the verdict and judgment in this action will be no bar to their recovery of whatever may appear to be due to them in actions to be instituted for their use.

3. The recognizance is not given and made payable to the heirs of John Kidd respectively and severally, as supposed in this point, but to the Commonwealth of Pennsylvania ; and it is competent for any one or more of those for whose use it was taken to sue in the name of the Commonwealth for their shares, severally for the shares of each, or aggregately for the shares of those suing.   The verdict in this case ought not to be for the specific amount due *to each heir, but for the amount due to all the heirs for whose use the action is brought.*

With this view of the law, the court are of opinion that *the plaintiff* is entitled to recover.

To this opinion of the court, the defendant by her counsel excepted.

November 13, 1850, a verdict was rendered for $1980.

It was assigned for error :

1. The court erred in refusing to swear the jury as requested by defendant's counsel.

2. There was error in the admission of the evidence mentioned in the second bill of exception.

3. There was error in the rejection of evidence mentioned in the third bill of exceptions.

4. There was error in the rejection of the evidence in the fourth bill of exceptions.

5. There was error in the rejection of the evidence proposed in the fifth and sixth bills of exceptions.

6. The court erred in their answers to the defendant's points. They should have answered in the affirmative.

7. The charge is generally erroneous—and especially in directing the jury to render a verdict for one-third of the valuation of the purpart No. 1, instead of for the penalty, or for the claim of *one* heir only.

The case was argued by *Hoffman* and *Banks,* for plaintiff in error.—The evidence was admissible.   It proved payment to the plaintiff.   *Debt* on recognizance is the *proper* form of action.   *Sci. fa.* sustained upon the *practice:* Blanchard v. Com'th, 6 *Watts* 311–12; Good v. Good, 7 *Watts* 159.   The recognizance changed the property from real to personal: 1 *Jones* 374.   It passed, upon the death of Robert Alexander, to his administrator, and not to William Moore as surviving heir: Lee v. Wright, 1 *Rawle* 149. The action is brought for the penalty, but for four of the five recognizees, and the verdict is for a specific sum ; whereas the verdict should have been for the penalty in the first instance, and for the

specific amount due to each plaintiff for whose use the suit was brought. An obligation given to several co-obligees jointly cannot be sued by some of the obligees and omitting others. It must be sued jointly or severally: Sweigart *v.* Berk, 8 *Ser. & R.* 308; 10 *Wheat.* 406. See also 1 *Chitty* 1, 5, 6, 7, 9, 31; 1 *Saunders* 154, note; act of 29th March 1832, sec. 37, *Purdon* 913, &c. The act of 14th January 1836 authorizes one suit, and all may be made parties by suggestion, &c. Distributees must bring *several* suits for the balance of an administrator's account.

See further 2 *Penn. Practice* 327 and 335; Taggart *v.* Cooper, 1 *Ser. & R.* 500.

*J. B. Gordon* and *W. Strong*, for defendant in error.—1. The suit is properly brought in the name of the legal plaintiff for the use of the parties interested.

Where the parties having a beneficial interest in a suit appear on the record, the court will recognise them as such, and treat them accordingly. But it is not necessary to the validity of a judgment that such parties should appear upon the record. If there be *legal* parties, it is sufficient: Reigart et al. *v.* Ellmaker, 6 *Ser. & R.* 45.

The parties interested have a right to the name of the commonwealth in a scire facias on the recognizance given by a sheriff: Brownfield *v.* Com'th for use, &c., 13 *Ser. & R.* 268.

A legal title is certainly sufficient for the maintenance of an action, except, perhaps, where the commonwealth stands as a trustee in an official bond, and then it may be necessary to show a particular injury as a title to her interference, in order to secure the obligor from an officious intermeddling. The equitable owner of a right of action can recover on the legal title only, and any one attempting to use it a second time would be repulsed at once by a plea of former recovery: Armstrong *v.* City of Lancaster, 5 *Watts* 69.

In an action upon a recognizance taken by the Orphans' Court, in the name of the commonwealth, to secure the payment of money, brought for the use of another, proof by the defendant that the person to whose use the suit is brought is not entitled to the money furnishes no defence to the recovery by the legal plaintiff. The right to the money will be determined when it is recovered from the defendant: The Com'th for use *v.* Lightner, 9 *W. & Ser.* 117.

2. The judgment was properly entered for the share of the plaintiffs, and not for the penalty.

Upon a scire facias on a recognizance in the Orphans' Court, to secure the interest of a widow in land, under the intestate law, a finding for the " plaintiff the sum of $1165, and that there is now

[*Kidd v. The Commonwealth.*]

due to the said plaintiff the sum of $963," with costs of suit and judgment thereon, is erroneous: Stewart *v*. Martin, 2 *Watts* 200.

A recovery in an action of debt upon a recognizance to secure the payment to several heirs under the intestate laws, by one of them, is no bar to a subsequent suit by another: Good *v*. Good, 7 *Watts* 200.

The opinion of the court was delivered June 30, by

Bell, J.—The offer by the defendant below, to prove the receipt of the balance of the avails of purpart No. 2 by the guardian of Mrs. Moore's children, was, we think, improperly rejected. Its exclusion, we are told, was put upon the ground that as it did not appear the payment by Miller to Keim was made with the assent of Mary Kidd, the former was subject to her action for her proportion of the funds, and consequently there was no such privity in respect of this transaction established between her and the wards as would entitle her to regard them as debtors; or, secondly, if they may be regarded as standing in that relation, the proffered defence must be treated as set-off, which was not available for want of the proper plea and notice, and because the claim is barred by the statute of limitations. But we are persuaded this view of the ground occupied by the defendant is incorrect. At the time when Miller handed over to Keim, as guardian, the balance remaining in his hands, after payment of the intestate's debts, both Mrs. Kidd and Mrs. Shoemaker were indebted to the children of their deceased sister for their shares of the valuation of purparts Nos. 1 and 3, adjudged by the Orphans' Court to the surviving sisters. All the parties for whose use the action is brought, being minors, were then represented by Keim, as their guardian, who in that capacity received the money in question. He subsequently accounted for the sum so received, to his wards, for a part of the offered proof was that becoming embarrassed, he placed the money paid him by Miller in the hands of one Stichter for the use of the minors, and it was, long after the commencement of this suit, paid to William Moore, as the survivor of his brothers and sisters, by virtue of an order of the Orphans' Court, made upon his application. At the moment of the payment to Keim, he, Miller, and the surviving sisters lived in the same town, and it is obvious, from the accounts settled by Miller as trustee, and by Mary Kidd, the defendant, as administrator of the intestate's estate, as well as from the general circumstances attending the transaction, that the parties interested were aware of the disposition made by the trustee of the money which had come to his hands. Yet, though still living, it is not asserted that either Mrs. Kidd or her sister, Mrs. Shoemaker, ever called upon Miller to pay to them their proportions of the sale made by him, or in any manner indicated they esteemed him their debtor. More than ten years have

[Kidd *v.* The Commonwealth.]

run since the money was handed to Keim, and at the end of that period we find one of Mrs. Moore's children, who, as representing the others, is the active prosecutor of this suit, claiming and actually enforcing payment of the sum received by his guardian, as money belonging to the wards. Surely, the facts I have imperfectly detailed afford sufficient ground for the inference that payment was made by Miller to Keim, and received by the latter with the knowledge and assent of the surviving sisters, as a payment on account of their indebtedness to the wards. Indeed, under the circumstances, it is difficult, if not impossible, to escape this conclusion, more especially as the defendant below now so avers, and the party beneficially interested as plaintiff claims the fund as belonging to him. As showing or tending to show payments, the offered proof was strictly admissible under the plea of payment, and, we think, ought at least so to have been submitted to the jury. The refusal to permit that branch of the trying tribunal to say whether the actors in the transaction did not so intend it, was consequently erroneous. I may add, it would be a subject of regret were a defence *pro tanto*, apparently so meritorious, defeated by the unnecessary application of a mere technical reason.

In every other particular, the action of the Court of Common Pleas is correct. A recognizance taken in the Orphans' Court, after proceedings in partition, is unlike a sheriff's recognizance or an official bond, where the remedy is regulated by statute. It is simply a common-law obligation of record, taken in the name of the commonwealth, for the security of the several parties in interest. But the commonwealth is, properly, the conusee, and therefore the legal title to sue resides in her. In every instance the action is properly brought in her name, and may be sustained without the suggestion of any other. But as each individual having an interest in the recognizance may use the name of the commonwealth to enforce that interest, convenience requires the name of the *cestui que use* who sues to be suggested of record; and this is constantly done where the proceeding is instituted by any less than the whole number of claimants: Good *v.* Good, 7 *Watts* 199. Perhaps in every instance, the name of the party suing ought to be noted, since it seems the judgment should not be for the penalty, but for the precise sum found to be due to the individual or individuals: Stewart *v.* Martin, 2 *Watts* 200. But even a mistake in this particular furnishes no defence against the legal plaintiff. To the defendant it is of no consequence who claims the money, since the court will look to its proper distribution after recovery: Commonwealth *v.* Lightner, 9 *W. & Ser.* 117; though doubtless the interference of a mere intruder without pretence of equitable title, would be forbidden.

It is objected here, that more than one, and less than the whole number of persons interested, are marked of record as *cestuis*

[Kidd v. The Commonwealth.]

*que use*. And what of that ? The cases show that one of several may proceed under the recognizance, and why not any number less than all ? There could be no question of mis-joinder or non-joinder, for the Commonwealth is always the legal party; and as the recognizance is taken for the security of each and all there is no technical difficulty, nor any objection in principle against suggesting the names of as many equitable claimants as choose to join. By the settled rule, they will recover just so much of the whole fund as they may show themselves entitled to, leaving the balance for those of the remaining parties who may afterwards sue. It was ruled in one of the cases already cited, that judgment, in such an instance, ought not to be given for the penal sum, as a cautionary judgment is unnecessary. It would follow from this that the verdict rendered below for an aggregate sum, specifically due to the named *cestuis que use*, is in accordance with established practice. I may remark, in conclusion, that there would seem to be great propriety in the joinder of parties complained of here, since they represented one share of the estate. That the court was right in refusing to discriminate between them on the application of the defendant, or swear the jury in a particular way, is too plain for remark. Even had a mistake been committed in this point, I do not see how it could have affected the defendant injuriously.

Judgment reversed.